# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HILTON HUDSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 17 C 7493 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| ERIC ZETTERGREN, an individual, ERIK PAYNE, an individual, MATTHEW LIEBERMANN, an individual, BRIAN BENTON, an individual, and the CITY OF JOLIET, an Illinois municipal corporation, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

On March 6, 2016, Defendants Eric Zettergren, Erik Payne, and Matthew Liebermann (the "Defendant Officers"), Joliet police officers, stopped Plaintiff Hilton Hudson for having a broken tail light and ultimately towed Hudson's car. Hudson has failed to regain possession of the car because of fines and costs owed to the Joliet police department. Hudson filed this suit against the Defendant Officers, Brian Benton, the Joliet chief of police, and the City of Joliet (the "City"), raising claims for retaliation (count one), illegal search and seizure (count two), deliberate indifference (count three), false arrest (count four), due process violations (count five), replevin (count six), conspiracy to deprive Hudson of his civil rights (counts seven and eight), failure to prevent a conspiracy (count nine), and a permanent injunction (count ten). Defendants move to dismiss the first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] The Court finds that Hudson has sufficiently provided the Defendant Officers with

---

[1] In his response to the motion to dismiss, Hudson agrees to withdraw his claims for conspiracy to deprive him of his civil rights (counts seven and eight) and failure to prevent a conspiracy (count nine). Doc. 23 at 11–12. The Court dismisses these claims without prejudice and does not further address them in this Opinion.

notice of his claim for an illegal search of his vehicle, allowing him to proceed with his Fourth Amendment claim as well as with his claim for unlawful retaliation. Because a § 1983 policies and practices claim against the City can proceed based only on Hudson's own experiences, that claim proceeds as well. But the Court agrees with Defendants that Hudson's false arrest and due process claims fail at the pleading stage, and that the replevin claim is time-barred. The Court cannot determine, at this time, that the statute of limitations bars the request for a permanent injunction, however, where Hudson bases that claim in both state and federal law.

## BACKGROUND[2]

On the evening of March 6, 2016, the Defendant Officers stopped Hudson while he was driving his 2003 Buick LeSabre. At the time of the stop, Hudson did not know of any warrants for his arrest, and he did not believe he had engaged in any criminal activity. After Hudson pulled over, the Defendant Officers approached his car and stood at the driver's side window, the passenger side window, and the trunk of the car. Hudson asked about the reason for the stop, and the officer at his window told him he had a broken tail light. Hudson indicated he would get the light repaired. The officer then ordered Hudson out of the car, at which point Hudson asked for a reason. He had not yet been asked for any identification. Without responding to Hudson's question as to why he was being ordered out of the car, the officer on the driver's side of the vehicle, who Hudson believes to be Zettergren, yelled, "[g]et the f*** out of the vehicle now Mr. Hudson!" while holding his service weapon. Doc. 16 at ¶ 46. The traffic stop on March 6, 2016 was not Hudson's first interaction with officers of the Joliet police department, with Hudson having previously settled a civil rights lawsuit he brought against the City and various police

---

[2] The facts in the background section are taken from Hudson's first amended complaint and are presumed true for the purpose of resolving Defendants' motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

officers stemming from a 2011 traffic stop. Hudson believes that the Defendant Officers knew his identity, presumably from prior arrests, because they addressed him by name before requesting any identification from him.

Hudson immediately obeyed the officer's command, stepping out of his car. The officer who had stood at the trunk of Hudson's car sat down in the driver's seat and began searching the vehicle. The officer standing on the passenger side removed the passenger from the car and then searched the car's trunk. Hudson protested the search, with the officer Hudson believes to be Liebermann responding "Shut the f*** up!" *Id*. ¶ 69. The Defendant Officers found a sealed bottle of alcohol in the armrest and decided to tow the car. The Defendant Officers gave Hudson two citations. When Hudson asked if he could retrieve personal items from the car before the tow truck arrived, two of the Defendant Officers threatened him with arrest if he did not leave.

On or about March 8, 2016, Hudson filed a citizen's complaint with the Joliet police department regarding the incident. While filing the complaint, he asked the desk personnel about the process of regaining possession of his car and the individual at the desk told Hudson that he should return after winning his case.

In late spring of 2016, the Illinois circuit court found that no probable cause existed for the March 6, 2016 searches and dismissed all charges against Hudson related to the traffic stop. While he was in court, Hudson asked the prosecuting attorney how he could retrieve his car, and the prosecutor told him that he should contact the Joliet police department. When Hudson thereafter contacted the Joliet police department, he learned that he owed fines and costs to the Joliet police department. Hudson remains unable to recover his vehicle and the personal property inside it as a result of the claimed fees.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**ANALYSIS**

**I.     Illegal Search and Seizure (Count Two)**

The Court first addresses Hudson's illegal search and seizure claim. The exact contours of the claim appear rather broad from the first amended complaint. The Defendant Officers argue that they had probable cause to stop Hudson for a tail light violation and so his entire claim fails. *See United States v. Miranda-Sotolongo*, 827 F.3d 663, 666 (7th Cir. 2016) ("A traffic stop is reasonable when the officer has reasonable suspicion that criminal activity is afoot, which can extend to violations of traffic laws[.]"). Hudson does not contest that he has not pleaded that the officers did not have reasonable suspicion concerning whether the tail light was actually out, instead focusing on the subsequent search of the vehicle. Defendants acknowledge that a search subsequent to a legitimate stop could violate the Fourth Amendment, depending on the

circumstances. But they argue that, at best, Hudson's pleading leaves ambiguous the exact contours of his illegal search claim. Although as currently pleaded, the Court will only allow Hudson to proceed on his Fourth Amendment claim with respect to the search of his car, the Court does not find it necessary for Hudson to replead the claim. His first amended complaint sufficiently provides the Defendant Officers with notice of his claim against them: that they conducted a search of the vehicle without a warrant and that no exception to the warrant requirement existed to justify that search. The Court can only determine whether Hudson can prevail on this theory upon a more fully developed record and therefore declines to delve into the more factual arguments regarding the search raised by the parties at this time.

## II.     Retaliation (Count One)

Hudson's retaliation claim is premised on the fact that the Defendant Officers undertook the traffic stop and subsequent search and seizure of his vehicle in retaliation for Hudson's prior interactions with the City and its officers, including the prior lawsuit Hudson had filed accusing the Joliet police of illegal searches and police misconduct. Defendants argue that because Hudson has not adequately alleged a Fourth Amendment violation—with the retaliation claim dependent on a finding that the traffic stop was unlawful—his retaliation claim fails as well. The Supreme Court recently decided a case concerning whether a claim for retaliatory arrest could proceed despite the existence of probable cause to arrest. *Lozman v. City of Riviera Beach, Fla.*, --- U.S. ----, 138 S. Ct. 1945 (2018). In *Lozman*, the Court narrowly decided the issue, finding a retaliatory arrest suit could proceed where the plaintiff alleged an official policy of retaliation "bearing little relation to the criminal offense for which the arrest is made," while noting that the "Court need not, and does not, address the elements required to prove a retaliatory arrest claim in other contexts." *Id.* at 1954–55. That the standard for a case such as that here remains unsettled

does not matter for purposes of deciding the motion to dismiss, however, for the Court has found that at this stage, Hudson's allegations sufficiently set forth a Fourth Amendment violation with respect to the search of the car. Therefore, Hudson may proceed on a retaliation claim in which he contends that the Defendant Officers engaged in a retaliatory search based on his prior speech.[3]

### III. *Monell* Policy and Practices (Count Three)

Hudson seeks to hold the City and Benton, its Police Chief, responsible for the allegedly illegal search and seizure of his vehicle, contending that the City adopted and implemented careless and reckless policies, customs, or practices that include allowing officers to search drivers without probable cause. The City and Benton argue that the Court should dismiss this claim because it consists merely of Hudson's personal experiences, which cannot support a policy or practice claim under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). A plaintiff may base *Monell* liability on (1) an express policy that, when enforced, causes a constitutional violation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policymaking authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). The policy or practice "must be the direct cause or moving force behind the constitutional violation." *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (citation omitted) (internal quotation marks omitted). Hudson

---

[3] For this reason, the Court need not address whether qualified immunity protects the Defendant Officers from this claim, especially where their argument in support of dismissal on this basis is conclusory at best. It is more appropriate for the Court to address these questions in a summary judgment motion.

appears to pursue a claim under the second prong.[4] To adequately allege a *Monell* widespread practice claim, Hudson must "plead[ ] factual content that allows the Court to draw the reasonable inference that the [City] maintained a policy, custom or practice" that contributed to the alleged violation. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (internal quotation marks omitted).

The City and Benton's only argument for dismissal of the *Monell* claim is that Hudson merely relies on his own experience, which cannot establish a widespread practice.[5] But recently, the Seventh Circuit has reminded courts not to apply a "heightened pleading standard" to *Monell* claims. *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (quoting *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993)). This means that a plaintiff need not identify other examples of the complained of practice to state a *Monell* claim but rather may rely solely on his own experience. See *id.* at 844 (noting that plaintiff "was not required to identify every other or even one other individual who had been arrested pursuant to a warrant obtained through the complained-of process"); *Williams v. City of Chicago*, No. 16-cv-8271, 2017 WL 3169065, at *8–9 (N.D. Ill. July 26, 2017) ("Post-*White* courts analyzing *Monell* claims . . . have 'scotched motions to dismiss' premised on arguments that the complaint does not contain allegations beyond those relating to the plaintiff." (collecting cases)). Although Hudson only offers his own

---

[4] Although Hudson includes allegations concerning Benton, the chief of police, he does not include allegations that Benton has final policymaking authority or appear to pursue this prong for purposes of establishing his *Monell* claim either in his first amended complaint or response to the motion to dismiss.

[5] The City and Benton also argue that the Court should dismiss the *Monell* claim to the extent that none of Hudson's individual claims survive. The Court allows at least some of Hudson's individual § 1983 claims to proceed, but even if it did not, this would not warrant automatic dismissal of Hudson's *Monell* claim. *See Miranda v. County of Lake*, --- F.3d ----, 2018 WL 3796482, at *3 (7th Cir. Aug. 10, 2018) ("*Monell* liability is possible even if no individual official is found deliberately indifferent.").

experience of being searched and dispossessed of his vehicle and personal belongings, this alone does not prevent him from pursuing a *Monell* claim. *See Barwicks v. Dart*, No. 14-cv-8791, 2016 WL 3418570, at *4 (N.D. Ill. June 22, 2016) (at summary judgment, a single incident cannot establish a *Monell* claim, but at the motion to dismiss stage, a plaintiff "need only allege a pattern or practice, not put forth the full panoply of evidence from which a reasonable factfinder could conclude such a pattern exists"). Discovery will uncover whether Hudson can establish or prove his claim.

IV.     **False Arrest (Count Four)**

The Defendant Officers also move to dismiss Hudson's false arrest claim, arguing that because they never arrested Hudson, he cannot make out any such claim or, even assuming an arrest occurred, that because probable cause existed for the traffic stop, they had justification to stop and arrest him. *See Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 679–80 (7th Cir. 2007) ("If the officer had probable cause to believe that the person he arrested was involved in criminal activity, then a Fourth Amendment claim for false arrest is foreclosed."). Hudson acknowledges that his tail light did not work and he was not actually placed under arrest. Instead, he claims that the Defendant Officers effectively arrested him because he did not feel free to leave after the Defendant Officers stopped him and began searching the vehicle. Hudson correctly points out that an arrest occurs when, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Tyler*, 512 F.3d 405, 409–10 (7th Cir. 2008) (quoting *Michigan v. Chesternut*, 486 U.S. 567, 573, 108 S. Ct. 1975, 100 L. Ed. 2d 565 (1988)). Although such an inquiry is highly fact-intensive, *id.*, the Court need not engage in it here because the existence of probable cause for the

traffic stop defeats any claim for false arrest, *Holmes*, 511 F.3d at 679–80. The Court therefore dismisses Hudson's claim for false arrest.

V.      **Due Process (Count Five)**

Hudson's due process claim amounts to an allegation that the City, through the Defendant Officers and Benton, deprived him of due process by refusing to return his car absent Hudson's payment of substantial charges and fines. Defendants argue that this claim fails because Hudson did not pursue available state law remedies. Because Hudson's due process claim challenges actions that are "random and unauthorized," the state need only provide adequate post-deprivation remedies for the subsequent deprivation of property. *See Hudson v. Palmer*, 468 U.S. 517, 533, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984) ("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."); *Easter House v. Felder*, 910 F.2d 1387, 1404–05 (7th Cir. 1990). Defendants argue that Hudson had several post-deprivation remedies available, meaning that he cannot now pursue a federal due process claim. Although "a plaintiff is not required to exhaust state remedies to bring a § 1983 claim, this does not change the fact that no due process violation has occurred when adequate state remedies exist." *Veterans Legal Defense Fund v. Schwartz*, 330 F.3d 937, 941 (7th Cir. 2003). Although in his response, Hudson suggests that the City's appeal process was not available, his reliance on the transcripts attached to his response for this proposition does not support such a conclusion. Nor can the Court conclude that Hudson could not avail himself of the state law procedures for replevin based on the allegations of Hudson's first amended complaint or response. *See Gable v. City of Chicago*, 296 F.3d 531, 540 (7th Cir. 2002) (noting that bailment or replevin actions may have been

9

available to plaintiffs whose cars had been impounded). Because Hudson must have included more than just a statement that the state law remedies are futile to allow his federal due process claim to proceed, the Court dismisses Hudson's due process claim. *See Kauth v. Hartford Ins. Co. of Ill.*, 852 F.2d 951, 955 (7th Cir. 1988) (collecting cases finding that to state a due process claim, a complaint must challenge the available state remedies as inadequate).

## VI.     Replevin and Permanent Injunction (Counts Six and Ten)

Defendants move to dismiss Hudson's state law claim for replevin (count six) and his claim for a permanent injunction against the City for its alleged unconstitutional towing practices (count ten), arguing that these claims are time-barred. The statute of limitations is an affirmative defense that Hudson need not anticipate in his complaint in order to survive a motion to dismiss. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). But that is not the case where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint reveals that an action is untimely under the governing statute of limitations." *Id.*; *see also Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (considering statute of limitations defense on motion to dismiss where relevant dates were set forth in the complaint).

Here, Hudson's replevin claim is subject to a one-year statute of limitations. *See* 745 Ill. Comp. Stat. 10/8-101(a) (setting forth statute of limitations for civil tort claims against local government entities and their employees). Hudson does not materially address the statute of limitations argument, only arguing that the Court should leave it for a later date. But his claim for replevin accrued no later than Spring 2016, when the court dismissed Hudson's citations related to the towing of his car and he then had the right to demand the return of his car. *See Gates v. Towery*, 435 F. Supp. 2d 794, 800 (N.D. Ill. 2006) (finding that plaintiff's replevin and

conversion claims accrued when his trial concluded and he was first able to demand the return of his property, at which time defendants' possession of that property became unlawful). Hudson filed his initial complaint on October 17, 2017, more than a year after the statute of limitations ran on this claim. Thus, the Court dismisses the replevin claim as time-barred.

But the Court cannot at this stage come to the same conclusion with respect to Hudson's request for a permanent injunction against the City for its allegedly unconstitutional towing practices. Defendants treat this claim only as a state law claim subject to the same one-year statute of limitations as the replevin claim, but Hudson claims that the towing practices violate not only the Illinois Constitution but also federal due process and equal protection.[6] The alleged federal violations are subject to a two-year statute of limitations. *See Gen. Auto Serv. Station v. City of Chicago*, No. 00 C 0368, 2004 WL 442636, at *6–7 (N.D. Ill. Mar. 9, 2004) (applying two-year statute of limitations to § 1983 actions seeking both legal and equitable relief). And Hudson contends that the City has continuously violated his rights in enforcing the towing ordinance. Although the Court at this stage makes no determination with respect to whether Hudson can establish a continuing violation, because he has at least stated a timely basis to support a permanent injunction through a § 1983 violation, the Court will not dismiss his request for a permanent injunction based on the statute of limitations.

---

[6] In their reply, Defendants state that if the state law portion of the claim based on the Illinois constitution fails, the request for an injunction cannot stand, but they provide no explanation or citation for why this is the case. Defendants have waived this new and undeveloped argument. *See Dexia Credit Local v. Rogan*, 629 F.3d 612, 625 (7th Cir. 2010) ("[A]rguments raised for the first time in a reply brief are waived."); *United States v. Elst*, 579 F.3d 740, 747 (7th Cir. 2009) ("Perfunctory and undeveloped arguments as well as arguments unsupported by pertinent authority are waived.").

11

**CONCLUSION**

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss [18].  The Court dismisses the false arrest (count four), due process (count five), conspiracy (counts seven and eight), and failure to act to prevent conspiracy (count nine) claims without prejudice.  The Court dismisses the replevin claim (count six) with prejudice.

Dated: September 4, 2018

_____
SARA L. ELLIS
United States District Judge