UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HILTON HUDSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17 C 7493 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| ERIC ZETTERGREN, an individual, ) | |
| ERIK PAYNE, an individual, MATTHEW ) | |
| LIEBERMANN, an individual, BRIAN ) | |
| BENTON, an individual, and the CITY OF ) | |
| JOLIET, an Illinois municipal corporation, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

On March 6, 2016, Defendants Eric Zettergren, Erik Payne, and Matthew Liebermann (the "Defendant Officers"), Joliet police officers, stopped Plaintiff Hilton Hudson for having a broken taillight and ultimately towed Hudson's car. Hudson has not recovered his car because of fines and costs he owes to the Joliet Police Department. Hudson filed this suit against the Defendant Officers, Brian Benton, the Joliet Chief of Police, and the City of Joliet (the "City"). The Court dismissed a number of Hudson's claims in ruling on Defendants' motion to dismiss but allowed him to proceed on his claims for retaliation (Count One), illegal search (Count Two), deliberate indifference (Count Three), and a permanent injunction (Count Ten). Defendants have moved for summary judgment on these remaining claims. Hudson did not respond to Defendants' motion.[1] Because the evidence in the record does not support Hudson's retaliation

---

[1] The Court previously dismissed Hudson's claims for failure to prosecute them. [43]. The Court granted Hudson's motion to reinstate his case over Defendants' objection but warned Hudson that a failure to participate in the summary judgment process would result in a dismissal of his claims with prejudice. [47]. Despite this explicit warning, Hudson did not respond to Defendants' motion for summary judgment. The Court, nevertheless, proceeds with its ruling rather than simply dismissing Hudson's claims with prejudice to provide a fuller basis for its decision.

and deliberate indifference claims, qualified immunity bars the illegal search claim, and his request for a permanent injunction is moot, the Court grants Defendants' motion for summary judgment.

## BACKGROUND[2]

On March 6, 2016 around 12:35 a.m., the Defendant Officers stopped Hudson and his passenger, Kaprison Holmes, while Hudson was driving his 2003 Buick LeSabre in the vicinity of Second or Third and Mississippi Avenues in Joliet, Illinois. Hudson was the registered owner of the Buick, a fact Payne confirmed after the stop by running the 2003 Buick's license plate through the police database. The Defendant Officers stopped Hudson because he had a broken taillight. After Hudson pulled over, Zettergren approached Hudson. Based on his belief that the area was known for a high level of gang, gun, and drug activity and for officer safety purposes, Zettergren directed Hudson to step out of the car and stand by its trunk. Liebermann approached Holmes, who revealed he was on parole. Liebermann also ordered Holmes to step out of the car and stand by its trunk.

Liebermann told Zettergren and Payne that Holmes was on parole. From their experience in law enforcement, Liebermann and Zettergren understood that law enforcement officers may search individuals on parole and the surrounding area without obtaining consent for the search. Based on this understanding, Zettergren and Liebermann searched the Buick. Zettergren first searched the immediate vicinity of the driver's seat and found an open and partially consumed bottle of vodka under the driver's seat. Zettergren then issued Hudson two citations for the broken taillight and the open alcohol. The state court later dismissed the citations without hearing after the Defendant Officers did not appear in court.

---
[2] The facts in the background section are derived from the Joint Statement of Undisputed Material Facts. The Court takes the facts in the light most favorable to Hudson, the non-movant.

The Defendant Officers towed Hudson's car towed based on the open alcohol violation. The City has an ordinance providing that police officers shall impound and tow a car when the officers "ha[ve] cause to believe that a motor vehicle has been used in connection with" certain violations. Doc. 52 ¶ 48. These violations include the illegal transportation of alcohol in violation of 625 Ill. Comp. Stat. 5/11-502, which prohibits the transport or possession of alcohol in the passenger area unless it is in the original container with an unbroken seal. Under the City's ordinance, the vehicle owner is responsible for the administrative fee and towing expenses, in addition to any other fines for the underlying offense, before the City will release the car from impound. The owner may challenge the tow at either an emergency hearing that occurs within two business days of the owner's demand or a regularly scheduled administrative hearing. An administrative hearing officer conducts the hearings according to specific procedures that allow affected individuals to have attorney representation. If the hearing officer determines that no probable cause existed for the tow and impoundment, the City becomes responsible for all costs. Hudson did not request an emergency hearing to challenge the towing of his 2003 Buick and did not appear at any regularly scheduled administrative hearing to challenge the towing. He indicated he would not pay even fifty cents for the towing and so did not recover his car.

Although the March 6, 2016 traffic stop was Hudson's first interaction with the Defendant Officers, it was not his first encounter with the Joliet Police Department. On September 18, 2003 and May 13, 2008, other Joliet police officers arrested Hudson during traffic stops. Hudson pleaded guilty to felonies in both cases. Joliet police officers also arrested Hudson on July 30, 2011, but the state dismissed the felony charges in that case in December 2011 as part of a plea deal in which Hudson pleaded guilty to attempted forgery. On August 5,

2013, Hudson filed a civil suit against the City, as well as several Joliet police officers not named in this suit. That case ultimately settled. The Defendant Officers had some general knowledge of Hudson at the time of the stop as someone whom the Joliet Police Department had arrested several times. Payne also knew that Hudson previously spent time in the Will County Jail. But they did not know anything about Hudson's prior civil rights suit against the City and had not spoken to Benton about Hudson or his pending lawsuit prior to the stop.

Hudson filed a formal complaint against the Defendant Officers based on the March 6, 2016 traffic stop. The Joliet Police Department has an Internal Affairs Division ("IAD") that investigates and addresses misconduct allegations against Joliet police officers. Lieutenant Marc Reid, who was the head of IAD between 2012 and 2018, followed standard IAD procedure to investigate Hudson's complaint. This procedure includes interviewing the complainant, involved officers, and any other cooperative witnesses, in addition to reviewing any physical evidence. IAD then reports its conclusions, which typically fall into four categories: (1) exonerated, (2) not sustained, (3) sustained, or (4) administratively closed. With respect to Hudson's complaint, Reid audio-recorded interviews of Hudson and the Defendant Officers. He also tried to contact Holmes on several occasions, but Holmes did not respond. Hudson ultimately received a letter from Joliet Police Department Deputy Chief Tab Jensen informing him that IAD exonerated Zettergren and Liebermann with respect to Hudson's charge of an unlawful stop and search. IAD also did not sustain Hudson's complaint of coarse and disrespectful language against Payne.

Hudson does not have personal knowledge of how IAD operates, other lawsuits against the Joliet Police Department, how many people the Joliet Police Department arrests or tickets in an average year, or the percentage of charges based on Joliet Police Department actions that are

dismissed before trial. During Reid's tenure as head of IAD, IAD sustained multiple allegations of misconduct against a Joliet police officer and imposed discipline on that officer.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## ANALYSIS

Despite participating in the drafting of the Joint Statement of Undisputed Facts, Hudson did not file a response to Defendants' motion for summary judgment. His failure to do so, however, does not automatically entitle Defendants to judgment on the remaining claims in Hudson's complaint. *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012). Instead, the Court must still ensure that Defendants are entitled to judgment as a matter of law. *Id.*

## I. Retaliation (Count One)

First, Hudson claims that the Defendant Officers undertook the traffic stop and subsequent search and seizure of his vehicle in retaliation for Hudson's prior interactions with the City and its officers, including Hudson's prior lawsuit accusing the Joliet police of illegal searches and police misconduct. To prevail on his First Amendment retaliation claim, Hudson must establish that "(1) he engaged in constitutionally protected speech; (2) he suffered a deprivation likely to deter his free speech; and (3) his protected speech was at least a motivating factor for the deprivation." *Lavite v. Dunstan*, 932 F.3d 1020, 1031 (7th Cir. 2019). Even assuming that Hudson can meet the first two factors, the evidence in the record does not create a genuine issue of fact as to causation. According to the record, Hudson and the Defendant Officers had no prior interactions, and the Defendant Officers only knew of Hudson generally based on prior arrests by other Joliet police officers. The Defendant Officers all attested that they did not know anything about Hudson's prior suit against the City at the time of the traffic stop and had not spoken to Benton about Hudson prior to that stop. Without anything other than the conclusory allegations in his complaint to support the causation element, Hudson cannot prevail on his retaliation claim. *See Roger Whitmore's Auto. Servs., Inc v. Lake Cty., Ill.*, 424 F.3d 659, 669 (7th Cir. 2005) (to defeat summary judgment, a plaintiff must present more than just speculation that an action occurred as retaliation for protected conduct).

## II. Illegal Search (Count Two)

The Court next addresses Hudson's illegal search claim. As the Court noted in ruling on Defendants' motion to dismiss, a search subsequent to a legitimate stop could violate the Fourth Amendment, depending on the circumstances. Defendants argue that the Fourth Amendment allowed them to search Hudson's car given that Holmes, a passenger in that car, admitted to

being on parole.  The Supreme Court has recognized that parolees have diminished expectations of privacy because parole serves as an alternative to continued imprisonment that is conditioned on compliance with certain conditions.  *Samson v. California*, 547 U.S. 843, 850 (2006).  In examining California's general search condition for parolees, which required a parolee to submit to suspicionless searches by parole officers or police officers at any time, the *Samson* Court concluded that the Fourth Amendment did not require reasonable suspicion for a valid search of a parolee.  *Id.* at 857.  The Illinois Supreme Court has applied *Samson* to Illinois' mandatory search condition for those on mandatory supervised release, like Holmes.  *People v. Wilson*, 228 Ill. 2d 35, 49–50 (2008).

Zettergren and Liebermann stated that they searched Hudson's car based on their understanding that Holmes' status as a parolee entitled them to search the car in which he was found.  *See United States v. White*, 781 F.3d 858, 862–63 (7th Cir. 2015) (warrantless and suspicionless search of parolee's property is reasonable where officers know of parolee's status at the time of the search).  The record does not clearly indicate whether the Defendant Officers knew who owned the Buick at the time of the search.  The fact that Hudson, not Holmes, owned the car could impact the constitutionality of the search.  However, qualified immunity shields the Defendant Officers from Hudson's claim because they did not violate clearly established law.  *See White v. Pauly*, --- U.S. ----, 137 S. Ct. 548, 551 (2017) ("Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (citation omitted) (internal quotation marks omitted)).  The Defendant Officers contend that a reasonable officer could believe that he could search the Buick based on Holmes' status as a parolee, with no published opinion forbidding the search.  As discussed, the Supreme Court has allowed for a search of a parolee without requiring

7

reasonable suspicion or probable cause, *Samson*, 547 U.S. at 857, and the Seventh Circuit has applied *Samson* to a search of a parolee's property, *White*, 781 F.3d at 862–63. Hudson has the burden of presenting clearly established law that the Defendant Officers violated to defeat their assertion of the defense. *See Ewell v. Toney*, 853 F.3d 911, 919 (7th Cir. 2017) ("Qualified immunity is an affirmative defense, but the plaintiff carries the burden of defeating it once it is raised. To defeat the qualified immunity defense, a plaintiff must show: (1) that the defendant violated a constitutional right, and (2) that the right was clearly established at the time so that it would have been clear to a reasonable officer that her conduct was unlawful in the situation." (citations omitted)). Hudson has not carried this burden given his failure to respond to Defendants' motion, and so the Court grants summary judgment for the Defendant Officers on the illegal search claim.

### III.     *Monell* Policy and Practices (Count Three)

Hudson also seeks to hold the City and Benton, its Police Chief, responsible for the allegedly illegal search and seizure of his vehicle. Hudson claims that the City adopted and implemented careless and reckless policies, customs, or practices that include allowing officers to search drivers without probable cause. A plaintiff may base *Monell* liability on (1) an express policy that, when enforced, causes a constitutional violation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policymaking authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). The policy or practice "must be the direct cause or moving force behind the constitutional violation." *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (citation omitted) (internal quotation marks omitted).

8

Although the Court allowed Hudson's *Monell* claim to proceed at the pleading stage based on Hudson's alleged personal experience, these allegations do not suffice at the summary judgment stage. *See Barwicks v. Dart*, No. 14-cv-8791, 2016 WL 3418570, at *4 (N.D. Ill. June 22, 2016) (although a plaintiff "need only allege a pattern or practice, not put forth the full panoply of evidence from which a reasonable factfinder could conclude such a pattern exists," the plaintiff must do more to prove his claim at summary judgment and cannot rely on a single incident to do so). The record does not include any additional support, aside from Hudson's one experience involving the search and seizure of his vehicle, to suggest that the City had an unconstitutional custom or practice. *See Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 796 (7th Cir. 2014) ("Such isolated incidents do not add up to a pattern of behavior that would support an inference of a custom or policy, as required to find that Wexford as an institution/corporation was deliberately indifferent to Shields' needs."); *Davis v. Carter*, 452 F.3d 686, 694 (7th Cir. 2006) (a plaintiff can meet his burden to demonstrate a widespread practice or custom by "present[ing] competent evidence tending to show a general pattern of repeated behavior (*i.e.*, something greater than a mere isolated event"). Therefore, the Court grants judgment for the City and Benton on Hudson's *Monell* claim.

## IV. Permanent Injunction (Count Ten)

Finally, the City argues that Hudson cannot obtain a permanent injunction against the City's towing ordinance. Injunctive relief requires "ongoing or imminent harm." *FTC v. Credit Bureau Ctr., LLC*, 937 F.3d 764, 772 (7th Cir. 2019). Hudson currently resides in Minnesota, and he has not presented any evidence that he has plans to return to Joliet. Nor has he alleged an ongoing or imminent harm.[3] Although an exception exists for actions that are "capable of

---

[3] To the extent Hudson claims harm from the City's impoundment of his car, the record does not support a finding that other remedies at law, including monetary damages, would not appropriately compensate

repetition, yet evading review," that exception does not apply here because "the mere physical or theoretical possibility of [Hudson's car] being improperly towed is insufficient." *Holstein v. City of Chicago*, 29 F.3d 1145, 1147–48 (7th Cir. 1994). The Court therefore finds Hudson's request for a permanent injunction is moot.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion for summary judgment [51]. The Court enters judgment for Defendants on Hudson's retaliation, unlawful search, and *Monell* claims (Counts One, Two, and Three). The Court dismisses Hudson's request for a permanent injunction (Count Ten) without prejudice for lack of subject matter jurisdiction. The Court terminates this case.

Dated: April 8, 2020

_____
SARA L. ELLIS
United States District Judge

---

Hudson for any harm arising from the impoundment. *See LAJIM, LLC v. Gen. Elec. Co.*, 917 F.3d 933, 944 (7th Cir. 2019) (plaintiff must demonstrate that "remedies available at law, such as monetary damages, are inadequate to compensate for that injury" to obtain injunctive relief (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006))).